# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| BANKUNITED N.A., | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § **Civil Action No. 4:18-cv-804-ALM** |
| | § |
| ASD KITCHEN, INC., AULLAH S. DARWISH, | § |
| SAM M. DARWISH, SKINNY IT CORP., AND | § |
| RAJESH P. PADOLE, | § |
| | § |
| Defendants. | § |
| | § |

**AFFIDAVIT IN SUPPORT OF CLERK'S ENTRY OF DEFAULT**

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| | § |
| HARRIS COUNTY | § |

BEFORE ME, the undersigned authority personally appeared Cameron J. Asby, known to me to be the person whose name is subscribed hereto, and who, after being first duly sworn, stated as follows:

1.      My name is Cameron J. Asby.

2.      I am counsel of record for Plaintiff, BankUnited N.A. ("Plaintiff" or "BankUnited"). I am over 18 years of age, of sound mind, and capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct, and I could testify to them competently if called upon to do so.

3.      On November 9, 2018, Plaintiff sued Defendant for breach of contract. A true and correct copy of Plaintiffs' Complaint is attached as Exhibit 1.

4.      On November 14, 2018 Defendant was served with a summons and a copy of Plaintiffs' Complaint by personally serving Rajesh P. Padole. True and correct copies of the returns of service are attached as Exhibit 2.

5.      Defendant's responsive pleading was due by December 5, 2018. To date, Defendant has not filed a responsive pleading or otherwise defended the suit.

6.      The Defendant is not a minor nor an incompetent person.

7.      The Defendant is not in military service. *See* BankUnited N.A.'s Service Members' Affidavit, filed with BankUnited's Request for Entry of Default.


Further Affiant Sayeth Not.

Cameron J. Asby


Sworn to and subscribed before me
by Cameron J. Asby on this  10  Day
of December, 2018

Notary Public

ALEJANDRO NIETO, JR
My Notary ID # 125230891
Expires March 17, 2021

Notary Public in and for the State of Texas

My commission expires: 03 · 17 · 2021

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| BANKUNITED N.A., §<br><br>Plaintiff, §<br><br>v. §<br><br>ASD KITCHEN, INC., AULLAH S. DARWISH, §<br>SAM M. DARWISH, SKINNY IT CORP., AND §<br>RAJESH P. PADOLE, §<br><br>Defendants. § | Civil Action No. 4:18-cv-804 |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff BankUnited, N.A., by and through its counsel hereby brings this Original Complaint against ASD Kitchen, Inc., Aullah S. Darwish, Sam M. Darwish, Skinny IT Corp., and Rajesh P. Padole.

## PARTIES

1.      Plaintiff BankUnited, N.A., ("BankUnited") is a national banking association organized under the laws of Delaware, with its principal place of business in Miami-Dade County, Florida.

2.      Defendant ASD Kitchen, Inc. ("ASD") is a corporation organized under the laws of the State of Texas with an office in Collin County, Texas. ASD may be served by serving its registered agent, Sam Darwish at 10570 John W. Elliot Drive, Suite 800, Frisco, TX 75034, or wherever he may be found.

3.      Defendant Aullah S. Darwish, ("Aullah Darwish") is an individual residing in Denton County, Texas. Aullah Darwish may be served at 3727 Broadmoor Way, Frisco, Texas 75033, or wherever she may be found.

4.      Defendant Sam M. Darwish ("Sam Darwish") is an individual residing in Denton County, Texas. Sam Darwish may be served at 3727 Broadmoor Way, Frisco, Texas 75033, or wherever he may be found.

5.      Defendant Skinny IT Corp. ("Skinny IT") is a corporation organized and existing under the laws of the State of Texas with an office in Collin County, Texas. Skinny IT may be served by serving its registered agent, Sam Darwish at 10570 John W. Elliot Drive, Suite 800, Frisco, TX 75034, or wherever he may be found.

6.      Rajesh P. Padole ("Padole" and, collectively with ASD, Aullah Darwish, Sam Darwish, and Skinny IT the "Defendants") is an individual residing in Denton County, Texas. Padole may be served at 7161 Greystone Lane, Frisco, Texas 75034, or wherever he may be found.

## JURISDICTION AND VENUE

7.      This Court has diversity jurisdiction over this matter under 28 U.S.C. § 1332(a)(1) because it is an action between citizens of different states (Delaware, Florida, and Texas) and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

8.      Venue is proper in this judicial district under 28 U.S.C. § 1391 because (i) ASD and Skinny IT have their principal places of business in this district, (ii) Sam Darwish, Aullah Darwish, and Padole all reside in this district, and (iii) a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTUAL BACKGROUND

9.      On or about September 29, 2015, non-party, Burgers, Buns & Beverages, Inc. ("BB&B") received approval from the Small Business Administration ("SBA") for BB&B's and BankUnited's Section 7(a) application in the amount of $1,684,000.00. A true and correct copy of the SBA Authorization is attached hereto as Exhibit A.

2

10.     On or about December 10, 2015, BankUnited loaned BB&B $1,684,000, as evidenced by the Note ("Note") and Loan Agreement ("Loan Agreement"). True and correct copies of the Note and Loan Agreement are attached hereto as Exhibit B and Exhibit C, respectively.

11.     On or about December 10, 2015, ASD executed an Unconditional Guarantee (the "ASD Guarantee"). Pursuant to the ASD Guarantee, ASD unconditionally guaranteed payment to BankUnited of all amounts owing under the Note. ASD further agreed that it would pay all amounts due to BankUnited upon written demand; that BankUnited was not required to seek payment from any other source before demanding payment from ASD; and ASD waived all rights to require presentment, protest, or demand be made upon the Borrower, BB&B. ASD also agreed to pay all of BankUnited's expenses, including attorneys' fees and costs, incurred to enforce the ASD Guarantee. Finally, ASD agreed to be jointly and severally liable with all other guarantors. A true and correct copy of ASD's Unconditional Guarantee is attached hereto as Exhibit D.

12.     On or about December 10, 2015, Aullah Darwish executed an Unconditional Guarantee (the "Aullah Darwish Guarantee"). Pursuant to the Aullah Darwish Guarantee, Aullah Darwish unconditionally guaranteed payment to BankUnited of all amounts owing under the Note. Aullah Darwish further agreed that she would pay all amounts due to BankUnited upon written demand; that BankUnited was not required to seek payment from any other source before demanding payment from Aullah Darwish; and Aullah Darwish waived all rights to require presentment, protest, or demand be made upon the Borrower, BB&B. Aullah Darwish also agreed to pay all of BankUnited's expenses, including attorneys' fees and costs, incurred to enforce the Aullah Darwish Guarantee. Finally, Aullah Darwish agreed to be jointly and severally liable with

all other guarantors. A true and correct copy of Aullah Darwish's Unconditional Guarantee is attached hereto as Exhibit E.

13.     On or about December 10, 2015, Sam Darwish executed an Unconditional Guarantee (the "Sam Darwish Guarantee"). Pursuant to the Sam Darwish Guarantee, Sam Darwish unconditionally guaranteed payment to BankUnited of all amounts owing under the Note. Sam Darwish further agreed that he would pay all amounts due to BankUnited upon written demand; that BankUnited was not required to seek payment from any other source before demanding payment from Sam Darwish; and Sam Darwish waived all rights to require presentment, protest, or demand be made upon the Borrower, BB&B. Sam Darwish also agreed to pay all of BankUnited's expenses, including attorneys' fees and costs, incurred to enforce the Sam Darwish Guarantee. Finally, Sam Darwish agreed to be jointly and severally liable with all other guarantors. A true and correct copy of Sam Darwish's Unconditional Guarantee is attached hereto as Exhibit F.

14.     On or about December 10, 2015, Skinny IT executed an Unconditional Guarantee (the "Skinny IT Guarantee"). Pursuant to the Skinny IT Guarantee, Skinny IT unconditionally guaranteed payment to BankUnited of all amounts owing under the Note. Skinny IT further agreed that it would pay all amounts due to BankUnited upon written demand; that BankUnited was not required to seek payment from any other source before demanding payment from Skinny IT; and Skinny IT waived all rights to require presentment, protest, or demand be made upon the Borrower, BB&B. Skinny IT also agreed to pay all of BankUnited's expenses, including attorneys' fees and costs, incurred to enforce the Skinny IT Guarantee. Finally, Skinny IT agreed to be jointly and severally liable with all other guarantors. A true and correct copy of Skinny IT's Unconditional Guarantee is attached hereto as Exhibit G.

15.     On or about December 10, 2015, Padole executed an Unconditional Guarantee (the "Padole Guarantee"). Pursuant to the Padole Guarantee, Padole unconditionally guaranteed payment to BankUnited of all amounts owing under the Note. Padole further agreed that he would pay all amounts due to BankUnited upon written demand; that BankUnited was not required to seek payment from any other source before demanding payment from Padole; and Padole waived all rights to require presentment, protest, or demand be made upon the Borrower, BB&B. Padole also agreed to pay all of BankUnited's expenses, including attorneys' fees and costs, incurred to enforce the Padole Guarantee. Finally, Padole agreed to be jointly and severally liable with all other guarantors. A true and correct copy of Padole's Unconditional Guarantee is attached hereto as Exhibit H. Each of the Defendants' guarantees are collectively referred to as the "Guarantees."

16.     On or around October 2018, BB&B defaulted on its obligations under the Note and Loan Agreement.

17.     On or about October 5, 2018, BankUnited sent a Notice of Default to BB&B, Aullah Darwish, Sam Darwish, and Padole. The Notice of Default provided Aullah Darwish, Sam Darwish, and Padole with notice that BB&B had defaulted on its loan from BankUnited. The Notice of Default provided further notice that BankUnited terminated the Loan and demanded immediate payment of the entire, outstanding balance. A true and correct copy of the Notice of Default is attached hereto as Exhibit I.

18.     On or about November 1, 2018 BankUnited sent a second Notice of Default to BB&B, Aullah Darwish, Sam Darwish, Padole, ASD and Skinny IT. The Notice of Default provided ASD and Skinny IT with notice that BB&B had defaulted on its loan from BankUnited. The Notice of Default provided further notice that BankUnited terminated the Loan and demanded

immediate payment of the entire, outstanding balance. A true and correct copy of the Notice of Default is attached hereto as Exhibit J.

19.     As of October 25, 2018, the total outstanding balance owed to BankUnited under the Defendants' Guarantees is $1,643,175.51, with per diem interest accruing in the amount of $326.30, plus attorneys' fees and costs and expenses as provided for under each Guarantee.

<u>**COUNT I: Breach of Contract**</u>
**(Against All Defendants)**

20.     BankUnited repeats and incorporates by reference the allegations set forth in paragraphs 1 through 19 of the Complaint as if set forth fully herein.

21.     Each Guarantee constitutes an enforceable contract between BankUnited and each of the Defendants, as each Guarantee was given in consideration of BankUnited providing the loan of $1,684,000 to BB&B.

22.     BankUnited satisfied its obligations under the Note, the Loan Agreement, and the Guarantees, performed all conditions precedent, and has not breached any of the foregoing.

23.     Defendants all breached their obligations under their respective Guarantees by, without limitation, failing to pay the outstanding amount due under the Note upon written demand by BankUnited.

24.     BankUnited provided written notice to Defendants of BB&B's default under the Note and Loan Agreement and demanded payment from Defendants. Defendants have failed to pay the amounts owed pursuant to their Guarantees.

25.     As a direct and proximate result of Defendants' breaches of their obligations under their respective Guarantees, BankUnited has suffered damages in an amount of no less than $1,643,175.51 as of October 25, 2018, exclusive of attorneys' fees and costs and expenses, all of which continue to accrue.

DM1\9127943.1

## PRAYER FOR RELIEF

WHEREFORE, BankUnited, N.A. respectfully requests that this Court grant it the following relief:

i.    Judgment against ASD Kitchen, Inc., Aullah S. Darwish, Sam M. Darwish, Skinny IT Corp., and Rajesh P. Padole, jointly and severally, in the amount of $1,643,175.51 with per diem interest accruing $326.30 from October 25, 2018, plus all costs and expenses, including attorneys' fees, incurred by BankUnited through the date of judgment; and

ii.   Such other and further relief as this Court deems just and proper

Dated November 9, 2018                    Respectfully submitted,


**DUANE MORRIS, LLP**

*By: /s/ Cameron J. Asby*
Cameron J. Asby
State Bar No. 24078160
cjasby@duanemorris.com
Thomas W. Sankey, P.C.
State Bar No. 17635670
twsankey@duanemorris.com
DUANE MORRIS LLP
1330 Post Oak Boulevard, Suite 800
Houston, TX 77056-3166
Tel.: 713.402.3900
Fax: 713.402.3901

**ATTORNEYS FOR PLAINTIFF
BANKUNITED, N.A.**

DM1\9127943.1

# EXHIBIT A



U.S. Small Business Administration

# AUTHORIZATION
## (SBA 7(A) GUARANTEED LOAN)

| SBA Loan # | |
|---|---|
| SBA Loan Name | Carl's Jr. |
| Approval Date | September 29, 2015 |

Lender:
BankUnited, N.A.
7815 NW 148 Street
Miami Lakes, FL 33016

U. S. Small Business Administration (SBA):
Dallas / Ft Worth District Office
4300 Amon Carter Boulevard
Suite 114
Fort Worth, TX 76155

SBA approves, under Section 7(a) of the Small Business Act as amended, Lender's application, received **September 29, 2015**, for SBA to guarantee **75.00%** of a loan ("Loan") in the amount of **$1,684,000.00** to assist:

Borrower:
1.  Burgers, Buns & Beverages, Inc.
    dba Carl's Jr.
    3635 W. Northwest Highway
    Dallas, TX 75220

All requirements in the Authorization which refer to Borrower also apply to any Co-Borrower.

### A.  THE GUARANTEE FEE IS $44,862.50.

Lender must pay the guarantee fee within 90 days of the approval date of this Authorization. Failure to timely pay the guarantee fee will result in cancellation of the SBA guarantee. The 90-day deadline may not be extended. Lenders are required to make their payments electronically. Payment can be made at www.pay.gov or by ACH if they have previously enrolled with the SBA. No part of the guarantee fee is refundable if Lender has made any disbursement. Lender may collect this fee from Borrower after initial disbursement of Loan, except when an escrow closing is used. Lender may not collect the fee until all Loan funds have been disbursed to the Borrower from the escrow account. Borrower may use Loan proceeds to reimburse Lender for the guarantee fee.

For loans of $150,000 or less, Lender may retain 25% of the guarantee fee but must remit the remainder to SBA.

### B.  ONGOING SERVICING FEE:

1.  Lender agrees to pay SBA an ongoing fee equal to 0.519 of one percent per year of the guaranteed portion of the outstanding balance.
2.  Lender may not charge or otherwise pass through this fee to Borrower.

### C.  IT IS LENDER'S SOLE RESPONSIBILITY TO:

1.  Close the Loan in accordance with the terms and conditions of this Authorization.
2.  Obtain valid and enforceable Loan documents, including obtaining the signature or written consent of any obligor's spouse if such consent or signature is necessary to bind the marital community or create a valid lien on marital property.
3.  Retain all Loan closing documents. Lender must submit these documents, along with other required documents, to SBA for review if Lender requests SBA to honor its guarantee on the Loan, or at any time SBA requests the documents for review.

### D.  REQUIRED FORMS

SBA Loan Number:
SBA Loan Name: Carl's Jr.

1. Lender may use its own forms except as otherwise instructed in this Authorization. Lender must use the following SBA forms for the Loan:

   SBA Form 147, Note

   SBA Form 1050, Settlement Sheet

   SBA Form 159 (7(a)), Compensation Agreement, for each required agent

   SBA Form 722, Equal Opportunity Poster

   SBA Form 148, Guarantee

   SBA Form 601, Agreement of Compliance

2. Lender may use computer-generated versions of mandatory SBA Forms, as long as the text is identical.

**E. CONTINGENCIES**--SBA issues this Authorization in reliance on representations in the Loan application, including supporting documents. The guarantee is contingent upon Lender:

1. Having and complying with a valid SBA Loan Guarantee Agreement (SBA Form 750 or SBA Form 750B for short-term loans) and any required supplemental guarantee agreements, between Lender and SBA;

2. Having paid the full guarantee fee in the time and manner required by this Authorization and the SBA Standard Operating Procedures (SOP) ;

3. Complying with the current SOP;

4. Completing disbursement no later than **12** months from the approval date of this Authorization, unless the disbursement period is extended by proper SBA procedures. (The final disbursement period cannot exceed 48 months from the approval date of this Authorization. Any undisbursed balance remaining after 48 months will be automatically cancelled by SBA);

5. Having no evidence since the date of the Loan application, or since any proceeding disbursement, of any unremedied adverse change in the financial condition, organization, management, operation, or assets of Borrower or Operating Company which would warrant withholding or not making any further disbursement; and,

6. Satisfying all of the conditions in this Authorization.

**F. NOTE TERMS:**

1. **Maturity:** This note will mature in **25** years and **6** months from **date of Note**.

2. **Repayment Terms:**

   Lender must insert onto SBA Note, Form 147, to be executed by Borrower, the following terms, without modification. Lender must complete all blank terms on the Note at time of closing:

   The interest rate on this Note will fluctuate. The initial interest rate is **5.25%** per year. This initial rate is the "Prime Rate" in effect on the first business day of the month in which SBA received the loan application, plus **2.00%**. The initial interest rate must remain in effect until the first change period begins unless reduced in accordance with SOP 50 10."

   Borrower must pay a total of **6** payments of interest only on the disbursed principal balance beginning **one** month from the month this Note is dated and every month thereafter; payments must be made on the **fifteenth calendar day** in the months they are due.

   Borrower must pay principal and interest payments of **$10,091.33** every month beginning **seven** months from the month this Note is dated; payments must be made on the **fifteenth calendar day** in the months they are due.

   Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal.

   Lender and Borrower may agree to pay an additional amount into an escrow account for payment of real estate taxes and required insurance related to commercial real estate securing the loan. Any such account must comply with SOP 50 10.

   The interest rate will be adjusted **every calendar quarter** (the "change period").

   The "Prime Rate" is the Prime Rate in effect on the first business day of the month (as published in the **Wall Street Journal** newspaper ) in which SBA received the application, or any interest rate change occurs. Base Rates will be rounded to two decimal places with .004 being rounded down and .005 being rounded up.

   The adjusted interest rate will be **2.00%** above the Prime Rate. Lender will adjust the interest rate on the first calendar day of each change period. The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change.

   The spread as identified in the Note may not be changed during the life of the Loan without the written agreement of the Borrower.

   For variable rate loans, the interest rate adjustment period may not be changed without the written consent of the Borrower.

   Lender must adjust the payment amount at least annually as needed to amortize principal over the remaining term of the note.

If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default. If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase.

**Loan Prepayment:**

Notwithstanding any provision in this Note to the contrary:

> **Borrower may prepay this Note.** Borrower may prepay 20 percent or less of the unpaid principal balance at any time without notice. If Borrower prepays more than 20 percent and the Loan has been sold on the secondary market, Borrower must:
>
> a. Give Lender written notice;
>
> b. Pay all accrued interest; and
>
> c. If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph b., above.
>
> If Borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice.
>
> **Subsidy Recoupment Fee.** When in any one of the first three years from the date of initial disbursement Borrower voluntarily prepays more than 25% of the outstanding principal balance of the loan, Borrower must pay to Lender on behalf of SBA a prepayment fee for that year as follows:
>
> a. During the first year after the date of initial disbursement, 5% of the total prepayment amount;
>
> b. During the second year after the date of initial disbursement, 3% of the total prepayment amount; and
>
> c. During the third year after the date of initial disbursement, 1% of the total prepayment amount.

All remaining principal and accrued interest is due and payable **25 years and 6 months from date of Note**.

**Late Charge:** If a payment on this Note is more than **10** days late, Lender may charge Borrower a late fee of up to **5.00%** of the unpaid portion of the regularly scheduled payment.

## G. USE OF PROCEEDS

1. **$993,564.00** to construct a building to be located at **3635 W. Northwest Highway, Dallas, TX 75220.** Construction financing guaranteed by SBA.

2. **$425,573.00** to purchase equipment.

3. **$40,000.00** to purchase inventory.

4. **$180,000.50 Working Capital & Closing Costs**

5. **$44,862.50** to pay the guarantee fee (Lender may not disburse Loan proceeds solely to pay the guarantee fee).

All amounts listed above are approximate. Lender may not disburse Loan proceeds solely to pay the guarantee fee. Lender may disburse to Borrower, as working capital only, funds not spent for the listed purposes as long as those funds do not exceed 10% of the specific purpose authorized or $10,000.00, whichever is less. An Eligible Passive Company may not receive working capital funds.

The loan must be made for a sound business purpose and must benefit the small business, and one 7(a) loan may not be split into two 7(a) loans merely to benefit the Lender. 13 CFR 120.120 and 120.130(e).

Lender must document that Borrower used the loan proceeds for the purposes stated in this Authorization. Lender and Borrower must complete and sign SBA Form 1050 at the time of first disbursement. Lender must document the first and all subsequent disbursements by attaching required documentation to the original SBA Form 1050 and must maintain the documentation in the Loan file, following procedures described in SOP 50 10.

## H. COLLATERAL CONDITIONS

Lender must obtain a lien on 100% of the interests in the following collateral and properly perfect all lien positions:

1. **Guarantee on SBA Form 148, by Sam M. Darwish**, resident in **Texas**.

2. **Guarantee on SBA Form 148, by Rajesh P. Padole**, resident in **Texas**.

3. **Guarantee on SBA Form 148, by Aullah K. Darwish**, resident in **Texas**.

4. **Guarantee on SBA Form 148, by Skinny IT corp**, resident in **Texas**.

5. **Guarantee on SBA Form 148, by ASD Kitchen, Inc.**, resident in **Texas**.

6.

---

**First Leasehold Deed Of Trust (including due on sale clause) on Building(s) Constructed on Leased Land** located at **3635 W. Northwest Highway Dallas, TX**. This property is **Commercial**.

    a. Subject to no other liens.

    b. Remaining term of lease, including options to renew exercisable solely by the Borrower, must cover term of Loan.

    c. Lease must contain clauses providing for the following:

        (1) Tenant's right to encumber leasehold estate;

        (2) No modification or cancellation of lease without Lender's or assignee's approval;

        (3) Lender's or assignee's right to acquire the leasehold at foreclosure sale or by assignment and right to reassign the leasehold estate (along with right to exercise any options) by Lender or successors; lessor may not unreasonably withhold, condition or delay the assignment;

        (4) Lender's or assignee's right to sublease;

        (5) Lender's or assignee's rights upon default of the tenant or termination of the lease. This would include notice, extended time to cure (at least 60 days), time allotted for foreclosure and sale, and procedures for non-monetary defaults;

        (6) Lender's or assignee's rights to hazard insurance proceeds resulting from damage to improvements;

        (7) Lender's or assignee's first right to share in condemnation proceeds.

    d. Lender must obtain Lessor's written consent to the leasehold **Deed Of Trust** and a collateral assignment of lease.

    e. Written waiver of Business Homestead required if real property collateral is owned by an individual or an individual and spouse.

    f. Evidence of title and priority of lien must be based upon:

    g. Lender must obtain a written agreement from all Lessors (including sublessors) agreeing to: (1) Subordinate to Lender Lessor's interest, if any, in this property; (2) Provide Lender written notice of default and reasonable opportunity to cure the default; and (3) Allow Lender the right to take possession and dispose of or remove the collateral.

7.    **Second Deed Of Trust (including due on sale clause) on land and improvements** located at **6072 Pisa Lane, Frisco, TX**. This property is **residential**.

    a. Subject only to prior lien(s) as follows:

        (1) **First: Citibank, N.A.** in the amount of **$180,000.00**.

    b. Written waiver of Business Homestead required if real property collateral is owned by an individual or an individual and spouse.

    c. Evidence of title and priority of lien must be based upon:

        (1) Title and/or Lien Search or other evidence of proper ownership and lien position.

8.    **First perfected security interest, subject to no other liens, in the following personal property** (including any proceeds and products), whether now owned or later acquired, wherever located: Equipment; Fixtures; Inventory; Accounts; Chattel Paper; General Intangibles; Owned by Burgers, Buns & Beverages, Inc., dba Carl's Jr.;

    a. Lender must obtain a written agreement from all Lessors (including sublessors) agreeing to: (1) Subordinate to Lender Lessor's interest, if any, in this property; (2) Provide Lender written notice of default and reasonable opportunity to cure the default; and (3) Allow Lender the right to take possession and dispose of or remove the collateral.

    b. Lender must obtain a list of all equipment and fixtures that are collateral for the Loan. For items with a unit value of $5,000 or more, the list must include a description and serial number, if applicable.

    c. Lender must obtain an appropriate Uniform Commercial Code lien search evidencing all required lien positions. If UCC search is not available, another type of lien search may be substituted.

The following language must appear in all lien instruments including Mortgages, Deeds of Trust, and Security Agreements:

*"The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations.*

---

a) *When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.*

b) *Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.*

*Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument."*

# I. ADDITIONAL CONDITIONS

## 1. Insurance Requirements

Prior to disbursement, Lender must require Borrower to obtain the following insurance coverage and maintain this coverage for the life of Loan:

a. **Flood Insurance.** Based on the Standard Flood Hazard Determination (FEMA Form 81-93):

(1) If any portion of a building that is collateral for the Loan is located in a special flood hazard area, Lender must require Borrower to obtain flood insurance for the building under the NFIP.

(2) If any equipment, fixtures, or inventory that is collateral for the Loan ("Personal Property Collateral") is in a building any portion of which is located in a special flood hazard area and that building is collateral for the Loan, Lender must require Borrower to also obtain flood insurance for the Personal Property Collateral under the NFIP.

(3) If any equipment, fixtures, or inventory that is collateral for the Loan ("Personal Property Collateral") is in a building any portion of which is located in a special flood hazard area and that building is not collateral for the Loan, Lender must require Borrower to obtain available flood insurance for the Personal Property Collateral. Lender may waive SBA's requirement for flood insurance for the Personal Property Collateral when the building is not collateral for the Loan, but only if Lender, using prudent lending standards, puts a written determination into the Loan file that flood insurance is either not available or not economically feasible.

Insurance coverage must be in amounts equal to the lesser of the insurable value of the property or the maximum limit of coverage available. Insurance coverage must contain a MORTGAGEE CLAUSE/LENDER'S LOSS PAYABLE CLAUSE (or substantial equivalent) in favor of Lender. This clause must provide that any action or failure to act by the debtor or owner of the insured property will not invalidate the interest of Lender and SBA. (Borrower will be ineligible for any future SBA disaster assistance or business loan assistance if Borrower does not maintain any required flood insurance for the entire term of the Loan.)

b. **Real Estate Hazard Insurance** coverage on all real estate that is collateral for the Loan in the amount of the full replacement cost. If full replacement cost insurance is not available, coverage must be for maximum insurable value. Insurance coverage must contain a MORTGAGEE CLAUSE (or substantial equivalent) in favor of Lender. This clause must provide that any action or failure to act by the mortgagor or owner of the insured property will not invalidate the interest of Lender. The policy or endorsements must provide for at least 10 days prior written notice to Lender of policy cancellation.

c. **Personal Property Hazard Insurance** coverage on all equipment, fixtures or inventory that is collateral for the Loan, in the amount of full replacement costs. If full replacement cost insurance is not available, coverage must be for maximum insurable value. Insurance coverage must contain a LENDER'S LOSS PAYABLE CLAUSE in favor of Lender. This clause must provide that any action or failure to act by the debtor or owner of the insured property will not invalidate the interest of Lender. The policy or endorsements must provide for at least 10 days prior written notice to Lender of policy cancellation.

d. **Life Insurance,** satisfactory to Lender :

(1) on the life of **Sam M. Darwish** in the amount of **$500,000.00**.

(2) on the life of **Rajesh P. Padole** in the amount of **$500,000.00**.

Lender must obtain a collateral assignment of each policy with Lender as assignee, and Lender must also obtain acknowledgment of the assignment by the Home Office of the Insurer. Lender must assure that Borrower pays the premium on the policy.

## 2. Borrower, Guarantor and Operating Company Documents

a. Prior to closing, Lender must obtain from Borrower, Guarantor and Operating Company a current copy of each of the following as appropriate:

(1) **Corporate Documents**--Articles or Certificate of Incorporation (with amendments), any By-laws, Certificate of Good Standing (or equivalent), Corporate Borrowing Resolution, and, if a foreign corporation, current authority to do business within this state.

(2) **Limited Liability Company (LLC) Documents**--Articles of Organization (with amendments), Fact Statement or Certificate of Existence, Operating Agreement, Borrowing Resolution, and evidence of registration with the appropriate authority.

(3) **General Partnership Documents**--Partnership Agreement, Certificate as to Partners, and Certificate of Partnership or Good Standing (or equivalent), as applicable.

(4) **Limited Partnership Documents**--Partnership Agreement, Certificate as to Partners, and Certificate of Partnership or Good Standing (or equivalent), as applicable, Certificate of Limited Partnership, and evidence of registration with the appropriate authority.

(5) **Limited Liability Partnership (LLP) Documents**--Partnership Agreement, Certificate as to Partners, Certificate of Partnership or Good Standing (or equivalent) as applicable, and evidence of registration with the appropriate authority.

(6) **Trustee Certification**--A Certificate from the trustee warranting that:

    (a) The trust will not be revoked or substantially amended for the term of the Loan without the consent of SBA;

    (b) The trustee has authority to act;

    (c) The trust has the authority to borrow funds, guarantee loans, and pledge trust assets;

    (d) If the trust is an Eligible Passive Company, the trustee has authority to lease the property to the Operating Company;

    (e) There is nothing in the trust agreement that would prevent Lender from realizing on any security interest in trust assets;

    (f) The trust agreement has specific language confirming the above; and

    (g) The trustee has provided and will continue to provide SBA with a true and complete list of all trustors and donors.

(7) **Trade Name**--Documentation that Borrower has complied with state requirements for registration of Borrower's or Operating Company's trade name (or fictitious name), if one is used.

b. Prior to closing, Lender must obtain from Borrower and Operating Company:

(1) **Ownership**--Evidence that ownership and management have not changed without Lender's approval since the application was submitted.

### 3. Operating Information

Prior to any disbursement of Loan proceeds, Lender must obtain:

a. **Verification of Financial Information**--Lender must submit IRS Form 4506-T (SBA version) to the Internal Revenue Service to obtain federal income tax information on Borrower, or the Operating Company if the Borrower is an EPC, for the last 3 years (unless Borrower or Operating Company is a start-up business). If the business has been operating for less than 3 years, Lender must obtain the information for all years in operation. This requirement does not include tax information for the most recent fiscal year if the fiscal year-end is within 6 months of the date SBA received the application. If the applicant has filed an extension for the most recent fiscal year, Lender must obtain a copy of the extension along with evidence of payment of estimated taxes. Lender must compare the tax data received from the IRS with the financial data or tax returns submitted with the Loan application, and relied upon in approving the Loan. Borrower must resolve any significant differences to the satisfaction of Lender and SBA. Failure to resolve differences may result in cancellation of the Loan.

If the Loan involves a change of ownership, Lender must verify financial information provided by the seller of the business in the same manner as above.

If the IRS responds and the transcript reflects "Record not Found" for any tax year, Lender must follow the procedures detailed in SOP 50 10 to determine what steps must be taken to satisfy the SBA tax verification requirement.

If Lender does not receive a response from the IRS or copy of the tax transcript within 10 business days of submitting the IRS Form 4506-T, then Lender may close and disburse the loan provided that Lender sends a second request following precisely the procedures detailed in SOP 50 10 and Lender performs the verification and resolves any significant differences discovered, even if the Loan is fully disbursed.

b. **Authority to Conduct Business**--Evidence that Borrower and Operating Company have an Employer Identification Number and all insurance, licenses, permits and other approvals necessary to lawfully operate the business.

    c. **Flood Hazard Determination**--A completed Standard Flood Hazard Determination (FEMA Form 81-93).

    d. **Lease**--Current lease(s) on all business premises where collateral is located with term, including options, at least as long as the term of the Loan.

## 4. Injection

Lender must obtain evidence that prior to disbursement:

    a. **Cash Injection**--At least $299,794.00 cash has been injected into the business as equity capital. This cash is for **Land Lease Deposit, Soft Costs, Working Capital, and Fees.**

## 5. Appraisal

Prior to disbursement, and in accordance with SOP 50 10, Lender must obtain:

    a. **Real Estate Appraisal** on the real property located at **6072 Pisa Lane, Frisco, TX, 75034, Collin**, showing a fair market value of at least **$285,000.00**.

## 6. Construction Provisions

    a. **Building Standards:** In the construction of a new building or an addition to an existing building, the construction must conform with the "National Earthquake Hazards Reduction Program Recommended Provisions for the Development of Seismic Regulations for New Buildings" (NEHRP), or a building code that SBA has identified as having substantially equivalent provisions. Lender must obtain from Borrower evidence of compliance with these requirements. Examples of evidence include a certificate issued by a licensed building architect, construction engineer or similar professional, or a letter from a state or local government agency stating that an occupancy permit is required and that the local building codes upon which the permit is based include Seismic standards.

    b. Lender may charge Borrower a one-time fee not to exceed 2% of the portion of the Loan designated for construction. The actual fee must not exceed the cost of the extra service.

    c. Prior to closing, if an "as completed" appraisal was obtained prior to construction, Lender must obtain a statement from the appraiser after construction is completed that the building was built with only minor deviations (if any) from the plans and specifications upon which the original estimate of value was based.

    If the SBA guaranteed loan was used to cover the construction period, prior to closing Lender must notify the appropriate SBA CLSC of any deviation(s) and work with the SBA CLSC to determine an appropriate course of action, including securing additional collateral. Lender's notification to SBA must comply with SOP 50 10.

    If the appraiser is unable to issue a statement that the building was built with only minor deviations (if any) from the plans and specifications upon which the original estimate of value was based, but is able to provide a new appraisal demonstrating that the market value meets or exceeds the original estimate of value, then no additional action by Lender is necessary.

    d. **Compliance Form**--Lender must obtain SBA Form 601, Applicant's Agreement of Compliance, for projects where construction costs exceed $10,000.

    e. **Construction Safeguards**--Lender must take all normal construction Loan safeguards appropriate for the Loan. These safeguards may include reviewing plans and specifications, cost breakdowns, bonds, contracts, and builder's controls, and imposing necessary changes or requirements.

## 7. Certifications and Agreements

    a. Prior to disbursement, Lender must require Borrower and Operating Company to certify that:

      (1) **Receipt of Authorization**--Borrower and Operating Company have received a copy of this Authorization from Lender and acknowledge that:

        (a) The Authorization is not a commitment by Lender to make a loan to Borrower;

        (b) The Authorization is between Lender and SBA and creates no third party rights or benefits to Borrower;

        (c) The Note will require Borrower to give Lender prior notice of intent to prepay.

        (d) If Borrower defaults on Loan, SBA may be required to pay Lender under the SBA guarantee. SBA may then seek recovery of these funds from Borrower. Under SBA regulations, 13 CFR Part 101, Borrower may not claim or assert against SBA any immunities or defenses available under local law to defeat, modify or otherwise limit Borrower's obligation to repay to SBA any funds advanced by Lender to Borrower.

        (e) Payments by SBA to Lender under SBA's guarantee will not apply to the Loan account of Borrower, or diminish the indebtedness of Borrower under the Note or the obligations of any personal guarantor of the Note.

      (2) There has been no adverse change in Borrower's (and Operating Company) financial condition, organization, operations, or fixed assets since the date the Loan application was signed.

(3) **Child Support**--No principal who owns at least 50% of the ownership or voting interest of the company is delinquent more than 60 days under the terms of any (a) administrative order, (b) court order, or (c) repayment agreement requiring payment of child support.

(4) **Current Taxes**--Borrower and Operating Company are current (or will be current) with any loan proceeds specified for eligible tax payments) on all federal, state, and local taxes, including but not limited to income taxes, payroll taxes, real estate taxes, and sales taxes.

(5) **Environmental**--For any real estate pledged as collateral for the Loan or where the Borrower or Operating Company is conducting business operations (collectively "the Property"):

    (a) At the time Borrower or Operating Company submitted the Loan application, Borrower was in compliance with all local, state, and federal environmental laws and regulations pertaining to reporting or clean-up of any hazardous substance, hazardous waste, petroleum product, or any other pollutant regulated by state or federal law as hazardous to the environment (Contaminant), and regarding any permits needed for the creation, storage, transportation or disposal of any Contaminant;

    (b) Borrower or Operating Company will continue to comply with these laws and regulations;

    (c) Borrower or Operating Company, and all of its principals, have no knowledge of the actual or potential existence of any Contaminant that exists on, at, or under the Property, including groundwater under such Property other than what was disclosed in connection with the Environmental Investigation of the Property;

    (d) Until full repayment of the Loan, Borrower or Operating Company will promptly notify Lender and SBA if it knows or suspects that there has been, or may have been, a release of a Contaminant in, at, or under the Property, including groundwater, or if Borrower or Operating Company or such Property are subject to any investigation or enforcement action by any federal, state, or local environmental agency (Agency) pertaining to any Contaminant on, at, or under such Property, including groundwater.

    (e) As to any Property owned by Borrower or Operating Company, Borrower or Operating Company indemnifies, and agrees to defend and hold harmless, Lender and SBA, and any assigns or successors in interest which take title to the Property, from and against all liabilities, damages, fees, penalties or losses arising out of any demand, claim or suit by any Agency or any other party relating to any Contaminant found on, at or under the Property, including groundwater, regardless of whether such Contaminant resulted from Borrower's or Operating Company's operations. (Lender or SBA may require Borrower or Operating Company to execute a separate indemnification agreement).

(6) **Business Related Purpose**--The total of the payments by this Loan on Borrower's credit card obligation(s) is not greater than the total of Borrower's specific business-related purchases charged to the credit card(s).

h. Prior to disbursement, Lender must require Borrower and Operating Company to certify that they will:

(1) **Reimbursable Expenses**--Reimburse Lender for expenses incurred in the making and administration of the Loan.

(2) **Books, Records and Reports**-

    (a) Keep proper books of account in a manner satisfactory to Lender ;

    (b) Furnish year-end statements to Lender within **180** days of fiscal year end;

    (c) Furnish additional financial statements or reports whenever Lender requests them;

    (d) Allow Lender or SBA, at Borrower's or Operating Company's expense, to:

        [1] Inspect and audit books, records and papers relating to Borrower's and Operating Company's financial or business condition; and

        [2] Inspect and appraise any of Borrower's and Operating Company's assets; and

        [3] Allow all government authorities to furnish reports of examinations, or any records pertaining to Borrower and Operating Company, upon request by Lender or SBA.

(3) **Equal Opportunity**--Post SBA Form 722 Equal Opportunity Poster, where it is clearly visible to employees, applicants for employment and the general public.

(4) **American-made Products**--To the extent practicable, purchase only American-made equipment and products with the proceeds of the Loan.

(5) **Taxes**--Pay all federal, state, and local taxes, including income, payroll, real estate and sales taxes of the business when they come due.

(6) **Occupancy**--(a) Occupy at least 60% of the Rentable Property; (b) Continue to occupy at least 60% of the Rentable Property for the term of the Loan; (c) Lease long term no more than 20% of the Rentable Property to one or more tenants for business or residential use; (d) Plan to occupy within three years some of the remaining Rentable Property

not immediately occupied or leased long term; (e) Plan to occupy within ten years all of the Rentable Property not immediately occupied or leased long term; and (f) will not use Loan proceeds to improve the space not immediately occupied by Borrower to enhance the leasehold value to tenant beyond that necessary for the Borrower's intended use as a future occupant under (d) and (e) above, or to enhance the leasehold value to a tenant under (e) above. However, Borrower may provide up to 49% of the total Rentable Property occupied by Borrower for use by a resident owner or manager only if the nature of the business demands it.

c. Lender must require Borrower and Operating Company to certify that they will not, without Lender's prior written consent:

 (1) **Distributions**--Make any distribution of company assets that will adversely affect the financial condition of Borrower and/or Operating Company.

 (2) **Ownership Changes**--Change the ownership structure or interests in the business during the term of the Loan.

 (3) **Transfer of Assets**--Sell, lease, pledge, encumber (except by purchase money liens on property acquired after the date of the Note), or otherwise dispose of any of Borrower's property or assets, except in the ordinary course of business.

## ADMINISTRATOR, SMALL BUSINESS ADMINISTRATION

By: _Karen Moore_      11-02-2015
Karen Moore, AVP, Loan Closer of BankUnited, N.A.      Date

A Preferred Lender, as Lender and as an agent of and on behalf of the SBA for the purpose of executing this Authorization

# EXHIBIT B



U.S. Small Business Administration

# NOTE

| SBA Loan # | ██████████ |
|---|---|
| SBA Loan Name | **Carl's Jr.** |
| Date | **12-10-2015** |
| Loan Amount | **$1,684,000.00** |
| Interest Rate | **Variable** |
| Borrower | **Burgers, Buns & Beverages Inc.** |
| Operating Company | N/A |
| Lender | **BankUnited, N.A.** |

## 1. PROMISE TO PAY:

In return for the Loan, Borrower promises to pay to the order of Lender the amount of **One Million Six Hundred Eighty-four Thousand and 00/100** Dollars , interest on the unpaid principal balance, and all other amounts required by this Note.

## 2. DEFINITIONS:

"Collateral" means any property taken as security for payment of this Note or any guarantee of this Note.

"Guarantor" means each person or entity that signs a guarantee of payment of this Note.

"Loan" means the loan evidenced by this Note.

"Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

## 3. PAYMENT TERMS:

Borrower must make all payments at the place Lender designates. The payment terms for this Note are:

The interest rate on this Note will fluctuate. The initial interest rate is **5.25** %per year. This initial rate is the "Prime Rate in effect on the first business day of the month in which SBA received the loan application, plus **2.00** %. The initial interest rate must remain in effect until the first change period begins unless reduced in accordance with SOP 50 10."

Borrower must pay a total of **6** payments of interest only on the disbursed principal balance beginning **one** month from the month this Note is dated and every month thereafter; payments must be made on the **fifteenth calendarday** in the months they are due.

Borrower must pay principal and interest payments of **$10,091.33** every month beginning **seven** months from the month this Note is dated; payments must be made on the **fifteenth calendarday** in the months they are due.

Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal.

Lender and Borrower may agree to pay an additional amount into an escrow account for payment of real estate taxes and required insurance related to commercial real estate securing the loan. Any such account must comply with SOP 50 10.

The interest rate will be adjusted **every calendarquarter** (the "change period").

The "Prime Rate" is the Prime Rate in effect on the first business day of the month (as published in the **Wall Street Journal** newspaper ) in which SBA received the application, or any interest rate change occurs. Base Rates will be rounded to two decimal places with .004 being rounded down and .005 being rounded up.

The adjusted interest rate will be **2.00** %above the Prime Rate. Lender will adjust the interest rate on the first calendar day of each change period. The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change.

The spread as identified in the Note may not be changed during the life of the Loan without the written agreement of the Borrower. For variable rate loans, the interest rate adjustment period may not be changed without the written consent of the Borrower.

Lender must adjust the payment amount at least annually as needed to amortize principal over the remaining term of the note.

If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default. If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase.

**Loan Prepayment:**

Notwithstanding any provision in this Note to the contrary:

> **Borrower may prepay this Note.** Borrower may prepay 20 percent or less of the unpaid principal balance at any time without notice. If Borrower prepays more than 20 percent and the Loan has been sold on the secondary market, Borrower must:
>
> a. Give Lender written notice;
>
> b. Pay all accrued interest; and
>
> c. If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph b., above.
>
> If Borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice.
>
> **Subsidy Recoupment Fee.** When in any one of the first three years from the date of initial disbursement Borrower voluntarily prepays more than 25% of the outstanding principal balance of the loan, Borrower must pay to Lender on behalf of SBA a prepayment fee for that year as follows:
>
> a. During the first year after the date of initial disbursement, 5% of the total prepayment amount;
>
> b. During the second year after the date of initial disbursement, 3% of the total prepayment amount; and
>
> c. During the third year after the date of initial disbursement, 1% of the total prepayment amount.

All remaining principal and accrued interest is due and payable **25** years and **6** months from **date of Note**.

**Late Charge:** If a payment on this Note is more than **10** days late, Lender may charge Borrower a late fee of up to **5.00%** of the unpaid portion of the regularly scheduled payment.

**4. DEFAULT:** Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company:

A. Fails to do anything required by this Note and other Loan Documents;

B. Defaults on any other loan with Lender;

C. Does not preserve, or account to Lender's satisfaction for, any of the Collateral or its proceeds;

D. Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA;

E. Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA;

F. Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note;

G. Fails to pay any taxes when due

H. Becomes the subject of a proceeding under any bankruptcy or insolvency law;

I. Has a receiver or liquidator appointed for any part of their business or property;

J. Makes an assignment for the benefit of creditors;

K. Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note;

L. Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent; or

M. Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay this Note.

**5. LENDER'S RIGHTS IF THERE IS A DEFAULT:** Without notice or demand and without giving up any of its rights, Lender may:

A. Require immediate payment of all amounts owing under this Note;

B. Collect all amounts owing from any Borrower or Guarantor;

C. File suit and obtain judgment;

D. Take possession of any Collateral; or

E. Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

**6. LENDER'S GENERAL POWERS:**   Without notice and without Borrower's consent, Lender may:

    **A.**   Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses;

    **B.**   Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral.  Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs.  If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance;

    **C.**   Release anyone obligated to pay this Note;

    **D.**   Compromise, release, renew, extend or substitute any of the Collateral; and

    **E.**   Take any action necessary to protect the Collateral or collect amounts owing on this Note.

**7. WHEN FEDERAL LAW APPLIES:**   When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations.  Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes.  By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability.  As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

**8. SUCCESSORS AND ASSIGNS:**   Under this Note, Borrower and Operating Company include the successors of each, and Lender includes its successors and assigns.

**9. GENERAL PROVISIONS:**

    **A.**   All individuals and entities signing this Note are jointly and severally liable.

    **B.**   Borrower waives all suretyship defenses.

    **C.**   Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

    **D.**   Lender may exercise any of its rights separately or together, as many times and in any order it chooses.  Lender may delay or forgo enforcing any of its rights without giving up any of them.

    **E.**   Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note.

    **F.**   If any part of this Note is unenforceable, all other parts remain in effect.

    **G.**   To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor.  Borrower also waives any defenses based upon any claim that Lender did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale.

**10. STATE-SPECIFIC PROVISIONS:**
    NONE

**11. BORROWER'S NAME(S) AND SIGNATURE(S):**

**By signing below, each individual or entity becomes obligated under this Note as Borrower.**

**BORROWER:**

Burgers, Buns & Beverages Inc.

By _____

    Sam M. Darwish, President of Burgers, Buns & Beverages, Inc.

# EXHIBIT C

# LOAN AGREEMENT

THIS LOAN AGREEMENT ("Agreement") is made **December 10, 2015** between the Borrower and Lender identified in the attached Authorization issued by the U.S. Small Business Administration ("SBA") to Lender, dated **September 29, 2015**, SBA Loan Number ("Authorization").

SBA has authorized a guaranty of a loan from Lender to Borrower for the amount and under the terms stated in the attached Authorization (the "Loan")

In consideration of the promises in this Agreement and for other good and valuable consideration, Borrower and Lender agree as follows:

1. Subject to the terms and conditions of the Authorization and SBA's Participating Lender Rules as defined in the Guarantee Agreement between Lender and SBA, Lender agrees to make the Loan if Borrower complies with the following "Borrower Requirements". Borrower must:

   a. Provide Lender with all certifications, documents or other information Lender is required by the Authorization to obtain from Borrower or any third party;

   b. Execute a note and any other documents required by Lender; and

   c. Do everything necessary for Lender to comply with the terms and conditions of the Authorization.

2. The terms and conditions of this Agreement:

   a. Are binding on Borrower and Lender and their successors and assigns;

   and

   b. Will remain in effect after the closing of the Loan.

3. Failure to abide by any of the Borrower Requirements will constitute an event of default under the note and other loan documents

**BORROWER:**

**Burgers, Buns & Beverages, Inc.**

By

**Sam M. Darwish, President of**
**Burgers, Buns & Beverages, Inc.**

**LENDER:**

**BankUnited, N.A.**

By

**Karen Moore, AVP, Loan Closer of**
**BankUnited, N.A.**

# EXHIBIT D



U.S. Small Business Administration

# U.S. Small Business Administration
# UNCONDITIONAL GUARANTEE

| SBA Loan # | |
|---|---|
| SBA Loan Name | Carl's Jr. |
| Guarantor | ASD Kitchen, Inc. |
| Borrower | Burgers, Buns & Beverages,Inc. |
| Lender | BankUnited, N.A. |
| Date | 12-10-2015 |
| Note Amount | $1,684,000.00 |

## 1. GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

## 2. NOTE:

The "Note" is the promissory note dated **12-10-2015** in the principal amount of **One Million Six Hundred Eighty-four Thousand and 00/100** Dollars, from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

## 3. DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

## 4. LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor.

    A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

    B. Refrain from taking any action on the Note, the Collateral, or any guarantee;

    C. Release any Borrower or any guarantor of the Note;

    D. Compromise or settle with the Borrower or any guarantor of the Note;

    E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;

    F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

    G. Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

    H. Exercise any rights it has, including those in the Loan and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

## 5. FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

## 6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A. Guarantor waives all rights to:

    1) Require presentment, protest, or demand upon Borrower;

    2) Redeem any Collateral before or after Lender disposes of it;

    3) Have any disposition of Collateral advertised; and

    4) Require a valuation of Collateral before or after Lender disposes of it.

B. Guarantor waives any notice of:

    1) Any default under the Note;

    2) Presentment, dishonor, protest, or demand;

    3) Execution of the Note;

    4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;

    5) Any change in the financial condition or business operations of Borrower or any guarantor;

    6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and

    7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:

    1) Lender failed to obtain any guarantee;

    2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

    3) Lender or others improperly valued or inspected the Collateral;

    4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

    5) Lender impaired the Collateral;

    6) Lender did not dispose of any of the Collateral;

    7) Lender did not conduct a commercially reasonable sale;

    8) Lender did not obtain the fair market value of the Collateral;

    9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

    10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

    11) Lender made errors or omissions in Loan Documents or administration of the Loan;

    12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;

    13) Lender impaired Guarantor's suretyship rights;

    14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

    15) Borrower has avoided liability on the Note; or

    16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

**7. DUTIES AS TO COLLATERAL:**

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

**8. SUCCESSORS AND ASSIGNS:**

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

**9. GENERAL PROVISIONS:**

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

**10. STATE-SPECIFIC PROVISIONS:**

NONE

**11. GUARANTOR ACKNOWLEDGMENT OF TERMS.**

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

**12. GUARANTOR NAME(S) AND SIGNATURE(S):**

**By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.**

**GUARANTOR:**

ASD Kitchen, Inc.

By _____

Sam M. Darwish, President of ASD Kitchen, Inc.

Case 4:18-cv-00804   Document 1-5   Filed 11/09/18   Page 1 of 4 PageID #:   28

# EXHIBIT E



U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| SBA Loan # | |
|---|---|
| SBA Loan Name | Carl's Jr. |
| Guarantor | Aullah K. Darwish  S. |
| Borrower | Burgers, Buns & Beverages,Inc. |
| Lender | BankUnited, N.A. |
| Date | 12-10-2015 |
| Note Amount | $1,684,000.00 |

## 1. GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

## 2. NOTE:

The "Note" is the promissory note dated **12-10-2015** in the principal amount of **One Million Six Hundred Eighty-four Thousand and 00/100** Dollars, from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

## 3. DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

## 4. LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor.

    A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

    B. Refrain from taking any action on the Note, the Collateral, or any guarantee;

    C. Release any Borrower or any guarantor of the Note;

    D. Compromise or settle with the Borrower or any guarantor of the Note;

    E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;

    F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

    G. Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

    H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

## 5. FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

## 6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A. Guarantor waives all rights to:

    1) Require presentment, protest, or demand upon Borrower;

    2) Redeem any Collateral before or after Lender disposes of it;

    3) Have any disposition of Collateral advertised; and

    4) Require a valuation of Collateral before or after Lender disposes of it.

B. Guarantor waives any notice of:

    1) Any default under the Note;

    2) Presentment, dishonor, protest, or demand;

    3) Execution of the Note;

    4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;

    5) Any change in the financial condition or business operations of Borrower or any guarantor;

    6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and

    7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:

    1) Lender failed to obtain any guarantee;

    2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

    3) Lender or others improperly valued or inspected the Collateral;

    4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

    5) Lender impaired the Collateral;

    6) Lender did not dispose of any of the Collateral;

    7) Lender did not conduct a commercially reasonable sale;

    8) Lender did not obtain the fair market value of the Collateral;

    9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

    10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

    11) Lender made errors or omissions in Loan Documents or administration of the Loan;

    12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;

    13) Lender impaired Guarantor's suretyship rights;

    14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

    15) Borrower has avoided liability on the Note; or

    16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

## 7. DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

## 8. SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

## 9. GENERAL PROVISIONS:

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

## 10. STATE-SPECIFIC PROVISIONS:

NONE

## 11. GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

## 12. GUARANTOR NAME(S) AND SIGNATURE(S):

**By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.**

GUARANTOR:

X _____

Aullah. K. Darwish, Individually
S.

Case 4:18-cv-00804   Document 1-6   Filed 11/09/18   Page 1 of 4 PageID #: 32

# EXHIBIT F



U.S. Small Business Administration

**U.S. Small Business Administration**

# UNCONDITIONAL GUARANTEE

| SBA Loan # | |
|---|---|
| SBA Loan Name | **Carl's Jr.** |
| Guarantor | **Sam M. Darwish** |
| Borrower | **Burgers, Buns & Beverages Inc.** |
| Lender | **BankUnited, N.A.** |
| Date | **12-10-2015** |
| Note Amount | **$1,684,000.00** |

## 1. GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

## 2. NOTE:

The "Note" is the promissory note dated **12-10-2015** in the principal amount of **One Million Six Hundred Eighty-four Thousand and 00/100** Dollars, from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

## 3. DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

## 4. LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor.

A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B. Refrain from taking any action on the Note, the Collateral, or any guarantee;

C. Release any Borrower or any guarantor of the Note;

D. Compromise or settle with the Borrower or any guarantor of the Note;

E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G. Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

## 5. FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

## 6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A. Guarantor waives all rights to:

    1) Require presentment, protest, or demand upon Borrower;

    2) Redeem any Collateral before or after Lender disposes of it;

    3) Have any disposition of Collateral advertised; and

    4) Require a valuation of Collateral before or after Lender disposes of it.

B. Guarantor waives any notice of:

    1) Any default under the Note;

    2) Presentment, dishonor, protest, or demand;

    3) Execution of the Note;

    4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;

    5) Any change in the financial condition or business operations of Borrower or any guarantor;

    6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and

    7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:

    1) Lender failed to obtain any guarantee;

    2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

    3) Lender or others improperly valued or inspected the Collateral;

    4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

    5) Lender impaired the Collateral;

    6) Lender did not dispose of any of the Collateral;

    7) Lender did not conduct a commercially reasonable sale;

    8) Lender did not obtain the fair market value of the Collateral;

    9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

    10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

    11) Lender made errors or omissions in Loan Documents or administration of the Loan;

    12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;

    13) Lender impaired Guarantor's suretyship rights;

    14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

    15) Borrower has avoided liability on the Note; or

    16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

**7. DUTIES AS TO COLLATERAL:**

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

**8. SUCCESSORS AND ASSIGNS:**

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

**9. GENERAL PROVISIONS:**

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

**10. STATE-SPECIFIC PROVISIONS:**

NONE

## 11. GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

## 12. GUARANTOR NAME(S) AND SIGNATURE(S):

**By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.**

**GUARANTOR:**

X
Sam M. Darwish, Individually

# EXHIBIT G



U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| SBA Loan # | ▮▮▮▮ |
|---|---|
| SBA Loan Name | **Carl's Jr.** |
| Guarantor | **Skinny IT corp** |
| Borrower | **Burgers, Buns & Beverages,Inc.** |
| Lender | **BankUnited, N.A.** |
| Date | **12-10-2015** |
| Note Amount | **$1,684,000.00** |

### 1. GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

### 2. NOTE:

The "Note" is the promissory note dated **12-10-2015** in the principal amount of **One Million Six Hundred Eighty-four Thousand and 00/100** Dollars, from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

### 3. DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

### 4. LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor.

    A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

    B. Refrain from taking any action on the Note, the Collateral, or any guarantee;

    C. Release any Borrower or any guarantor of the Note;

    D. Compromise or settle with the Borrower or any guarantor of the Note;

    E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;

    F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

    G. Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

    H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

### 5. FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

### 6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A. Guarantor waives all rights to:

    1) Require presentment, protest, or demand upon Borrower;

    2) Redeem any Collateral before or after Lender disposes of it;

    3) Have any disposition of Collateral advertised; and

    4) Require a valuation of Collateral before or after Lender disposes of it.

B. Guarantor waives any notice of:

    1) Any default under the Note;

    2) Presentment, dishonor, protest, or demand;

    3) Execution of the Note;

    4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;

    5) Any change in the financial condition or business operations of Borrower or any guarantor;

    6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and

    7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:

    1) Lender failed to obtain any guarantee;

    2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

    3) Lender or others improperly valued or inspected the Collateral;

    4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

    5) Lender impaired the Collateral;

    6) Lender did not dispose of any of the Collateral;

    7) Lender did not conduct a commercially reasonable sale;

    8) Lender did not obtain the fair market value of the Collateral;

    9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

    10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

    11) Lender made errors or omissions in Loan Documents or administration of the Loan;

    12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;

    13) Lender impaired Guarantor's suretyship rights;

    14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

    15) Borrower has avoided liability on the Note; or

    16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

## 7. DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

## 8. SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

## 9. GENERAL PROVISIONS:

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

## 10. STATE-SPECIFIC PROVISIONS:

NONE

**11. GUARANTOR ACKNOWLEDGMENT OF TERMS.**

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

**12. GUARANTOR NAME(S) AND SIGNATURE(S):**

**By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.**

**GUARANTOR:**

Skinny IT corp

By _____

Sam M. Darwish, President of Skinny IT corp

# EXHIBIT H



U.S. Small Business Administration

# U.S. Small Business Administration
# UNCONDITIONAL GUARANTEE

| SBA Loan # | |
|---|---|
| SBA Loan Name | **Carl's Jr.** |
| Guarantor | **Rajesh P. Padole** |
| Borrower | **Burgers, Buns & Beverages Inc.** |
| Lender | **BankUnited, N.A.** |
| Date | **12-10-2015** |
| Note Amount | **$1,684,000.00** |

### 1. GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

### 2. NOTE:

The "Note" is the promissory note dated **12-10-2015** in the principal amount of **One Million Six Hundred Eighty-four Thousand and 00/100** Dollars, from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

### 3. DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

### 4. LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor.

   A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

   B. Refrain from taking any action on the Note, the Collateral, or any guarantee;

   C. Release any Borrower or any guarantor of the Note;

   D. Compromise or settle with the Borrower or any guarantor of the Note;

   E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;

   F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

   G. Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

   H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

### 5. FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

### 6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A. Guarantor waives all rights to:

    1) Require presentment, protest, or demand upon Borrower;

    2) Redeem any Collateral before or after Lender disposes of it;

    3) Have any disposition of Collateral advertised; and

    4) Require a valuation of Collateral before or after Lender disposes of it.

B. Guarantor waives any notice of:

    1) Any default under the Note;

    2) Presentment, dishonor, protest, or demand;

    3) Execution of the Note;

    4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;

    5) Any change in the financial condition or business operations of Borrower or any guarantor;

    6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and

    7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:

    1) Lender failed to obtain any guarantee;

    2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

    3) Lender or others improperly valued or inspected the Collateral;

    4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

    5) Lender impaired the Collateral;

    6) Lender did not dispose of any of the Collateral;

    7) Lender did not conduct a commercially reasonable sale;

    8) Lender did not obtain the fair market value of the Collateral;

    9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

    10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

    11) Lender made errors or omissions in Loan Documents or administration of the Loan;

    12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;

    13) Lender impaired Guarantor's suretyship rights;

    14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

    15) Borrower has avoided liability on the Note; or

    16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

**7. DUTIES AS TO COLLATERAL:**

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

**8. SUCCESSORS AND ASSIGNS:**

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

**9. GENERAL PROVISIONS:**

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

**10. STATE-SPECIFIC PROVISIONS:**

NONE

**11. GUARANTOR ACKNOWLEDGMENT OF TERMS.**

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

**12. GUARANTOR NAME(S) AND SIGNATURE(S):**

**By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.**

**GUARANTOR:**

X _____

Rajesh P. Padole, Individually

# EXHIBIT I

BankUnited, N. A.
7815 NW 148th Street
Miami Lakes, FL 33016
www.bankunited.com

 **BankUnited**
VIA FedEx

October 5, 2018

## NOTICE OF DEFAULT

Burgers, Buns & Beverages, Inc
10570 John Elliot Dr. #800
Frisco, TX 75033

Sam & Aullah Darwish
6072 Pisa Lane
Frisco, TX 75034

Rajesh Padole
7161 Greystone Ln
Frisco, TX 75034

**Re:** U.S. Small Business Administration Note # ▇▇▇ in the Original Principal Amount of **$1,684,000.00**, dated, **December 10, 2015** in the Name of Burgers, Buns, & Beverages Inc. (the Note) to BankUnited, N.A. (the Bank)

Dear Obligor:

Please be advised that the above referenced loan with BankUnited, N.A. and guaranteed by the U.S. Small Business Administration for **$1,684,000.00** dated **December 10, 2015;** is in default due to failure to make timely loan payments, and changes in business operations that materially affect ability to pay this note. This constitutes a default under the terms of the Note. In accordance with lender's right if there is a Default of the Note; BankUnited N.A. has terminated the Loan and now declares the entire balance of the Loan, plus interest thereon, immediately due and payable, as follows:

| | |
|---|---:|
| Principal balance | $1,620,284.23 |
| Accrued interest through 10/5/2018 | $15,797.76 |
| Late fees | $567.37 |
| **Total** | **$1,636,649.36** |
| Per diem interest after 10/5/2018 | $326.307240 |

Please make arrangements for payment in full of the above referenced Loan immediately. Payment should be sent to BankUnited c/o Edward Grochowalski at 7765 NW 148 Street, Miami Lakes, FL 33016 in the form of a cashier's check or wire transfer as follows:

**By Wire:**
BankUnited, N.A.
ABA ▇▇▇
Account # 0▇▇▇▇
Attention: Edward Grochowalski
Reference: Burgers, Buns & Beverages, Inc. # ▇▇▇

If not paid immediately, this matter will be turned over to the Bank's attorneys to take whatever legal action is necessary to recover the monies owing to the Bank. Nothing contained in this letter or in previous or subsequent discussions or communications between the Obligors, the Bank, or their respective representatives shall serve or be deemed to waive or modify any provision of the Loan Documents or of any other document executed by the Obligors in connection with the Loan, nor waive, modify or postpone any right or remedy of the Bank thereunder, and each and every one of its rights and remedies are expressly reserved by the Bank. Moreover, any partial payments made by any of the Obligors to the Bank, if accepted, shall not constitute a waiver or modification of any default or a waiver or postponement of any rights or remedies of the Bank.  Any additional fees and expenses incurred by the Lender in an attempt to secure the deficient balance will be the responsibility of the borrower or guarantor, also indicated under the terms of the note.

Please note that the Debt Collection Improvement Act requires delinquent Federal debts to be referred to the Treasury for further collection efforts. Any future federal income tax refund to which you may be entitled may be retained for application against your overdue account/obligation with SBA.  Additionally, the SBA may also offset against any other government proceeds, including but not limited to contractor or vendor payments, retirement plans, social security benefits, federal employee salary and lottery winnings and wages from a private employer.  Additionally, your delinquent credit obligations will be reported to credit bureaus which may hinder future credit opportunities for you.

Please contact Edward Grochowalski immediately to make arrangements for repayment of the obligation at (305) 818-8511.

Sincerely,

Edward Grochowalski
BankUnited, N.A.
Workout and Recovery

# EXHIBIT J

BankUnited, N. A.
7815 NW 148th Street
Miami Lakes, FL 33016
www.bankunited.com

 **BankUnited**

VIA FedEx

November 1, 2018

**NOTICE OF DEFAULT**

Burgers, Buns & Beverages, Inc
10570 John Elliot Dr. #800
Frisco, TX 75033

Sam & Aullah Darwish
6072 Pisa Lane
Frisco, TX 75034

Rajesh Padole
7161 Greystone Ln
Frisco, TX 75034

ASD Kitchen, Inc.
10570 John Elliot Dr. #800
Frisco, TX 75033

Skinny IT Corp
10570 John Elliot Dr. #800
Frisco, TX 75033

**Re:**   U.S. Small Business Administration Note # ▮▮▮ in the Original Principal Amount of **$1,684,000.00**, dated, **December 10, 2015** in the Name of Burgers, Buns, & Beverages Inc. (the Note) to BankUnited, N.A. (the Bank)

Dear Obligor:

Please be advised that the above referenced loan with BankUnited, N.A. and guaranteed by the U.S. Small Business Administration for **$1,684,000.00** dated **December 10, 2015;** is in default due to failure to make timely loan payments, and changes in business operations that materially affect ability to pay this note. This constitutes a default under the terms of the Note. As you are aware, notice of default and demand for payment was previously made on October 5, 2018 to Burgers, Buns & Beverages, Inc., Sam Darwish, individually, & who also is ASD Kitchen, Inc's registered agent, Aullah Darwish, Skinny IT Corp and Rajesh Padole. In accordance with lender's right if there is a Default of the Note; BankUnited N.A. has terminated the Loan and now declares the entire balance of the Loan, plus interest thereon, immediately due and payable, as follows:

| | |
|---|---|
| Principal balance | $1,620,284.23 |
| Accrued interest through 10/5/2018 | $15,797.76 |
| Late fees | $567.37 |
| **Total** | **$1,636,649.36** |
| Per diem interest after 10/5/2018 | $326.307240 |

Please make arrangements for payment in full of the above referenced Loan immediately. Payment should be sent to BankUnited c/o Edward Grochowalski at 7765 NW 148 Street, Miami Lakes, FL 33016 in the form of a cashier's check or wire transfer as follows:

**By Wire:**
BankUnited, N.A.
ABA ███████
Account # ███████
Attention: Edward Grochowalski
Reference: Burgers, Buns & Beverages, Inc. # ██████

If not paid immediately, this matter will be turned over to the Bank's attorneys to take whatever legal action is necessary to recover the monies owing to the Bank. Nothing contained in this letter or in previous or subsequent discussions or communications between the Obligors, the Bank, or their respective representatives shall serve or be deemed to waive or modify any provision of the Loan Documents or of any other document executed by the Obligors in connection with the Loan, nor waive, modify or postpone any right or remedy of the Bank thereunder, and each and every one of its rights and remedies are expressly reserved by the Bank. Moreover, any partial payments made by any of the Obligors to the Bank, if accepted, shall not constitute a waiver or modification of any default or a waiver or postponement of any rights or remedies of the Bank. Any additional fees and expenses incurred by the Lender in an attempt to secure the deficient balance will be the responsibility of the borrower or guarantor, also indicated under the terms of the note.

Please note that the Debt Collection Improvement Act requires delinquent Federal debts to be referred to the Treasury for further collection efforts. Any future federal income tax refund to which you may be entitled may be retained for application against your overdue account/obligation with SBA. Additionally, the SBA may also offset against any other government proceeds, including but not limited to contractor or vendor payments, retirement plans, social security benefits, federal employee salary and lottery winnings and wages from a private employer. Additionally, your delinquent credit obligations will be reported to credit bureaus which may hinder future credit opportunities for you.

Please contact Edward Grochowalski immediately to make arrangements for repayment of the obligation at (305) 818-8511.

Sincerely,

Edward Grochowalski
BankUnited, N.A.
Workout and Recovery

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
      Plaintiff

☐ 3  Federal Question
      *(U.S. Government Not a Party)*

☐ 2  U.S. Government
      Defendant

☐ 4  Diversity
      *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans | ☐ 340 Marine | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1  Original
      Proceeding

☐ 2  Removed from
      State Court

☐ 3  Remanded from
      Appellate Court

☐ 4  Reinstated or
      Reopened

☐ 5  Transferred from
      Another District
      *(specify)*

☐ 6  Multidistrict
      Litigation -
      Transfer

☐ 8  Multidistrict
      Litigation -
      Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____

DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# EXHIBIT 2

<u>CAUSE NO. 4:18-cv-00804-ALM</u>

| | | |
|---|---|---|
| BANKUNITED N.A., | § | |
| **PLAINTIFF** | § | |
| | § | IN THE US DISTRICT COURT, EASTERN |
| VS. | § | DISTRICT OF TEXAS |
| | § | |
| ASD KITCHEN, INC., AULLAH S DARWISH, | § | _____ COUNTY, FD |
| SAM M DARWISH, SKINNY IT CORP., AND | § | |
| RAJESH P PADOLE, | § | |
| **DEFENDANT** | § | |

### RETURN OF SERVICE

**ON Tuesday, November 13, 2018 AT 03:16 PM**
SUMMONS IN A CIVIL ACTION, PLAINTIFF'S ORIGINAL COMPLAINT, EXHIBIT A, EXHIBIT B,
EXHIBIT C, EXHIBIT D, EXHIBIT E, EXHIBIT F, EXHIBIT G, EXHIBIT H, EXHIBIT I, EXHIBIT J, CIVIL
COVER SHEET for service on Rajesh P. Padole came to hand.

**ON Wednesday, November 14, 2018 AT 10:05 AM, I, DOUG HUBBS, PERSONALLY
DELIVERED THE ABOVE-NAMED DOCUMENTS TO:** RAJESH P. PADOLE, 7161
GREYSTONE LANE, FRISCO, COLLIN COUNTY, TX, 75034.

My name is DOUG HUBBS. My address is 1201 Louisiana, Suite 370, Houston, Texas 77002,
USA. I am a private process server authorized by and through the Supreme Court of Texas
(SCH 07364, expires Saturday, August 31, 2019). My date of birth is October 12, 1970. I am in
all ways competent to make this statement, and this statement is based on personal knowledge.
I am not a party to this case, and have no interest in its outcome. I declare under penalty of
perjury that the foregoing is true and correct.

Executed in Collin County, Texas on Wednesday, November 14, 2018

/S/ DOUG HUBBS

M2525-00013

DocID: P257898_3